# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————

No. 08-2197

——————

Kennard Gatewood,     *
          *

      Petitioner - Appellant,     *
          *
          *    Appeal from the United States
     v.           *    District Court for the
          *    Eastern District of Arkansas.
T. C. Outlaw, Warden,     *
          *

      Respondent - Appellee.     *

——————

Submitted: December 10, 2008
Filed: March 26, 2009 (Corrected April 8, 2009)

——————

Before LOKEN, Chief Judge, BEAM and ARNOLD, Circuit Judges.

——————

LOKEN, Chief Judge.

Kennard Gatewood was convicted of being a felon in possession of a firearm, violating 18 U.S.C. § 922(g). While serving his sentence, he successfully completed a 500-hour Bureau of Prisons ("BOP") residential drug abuse program and sought the discretionary sentence reduction BOP may grant under 18 U.S.C. § 3621(e)(2)(B). BOP did not reduce his sentence, instead applying its regulation declaring an inmate convicted of a felony firearm possession offense ineligible for that relief, 28 C.F.R. § 550.58(a)(1)(vi)(B), a regulation the Supreme Court held to be a reasonable exercise of the agency's statutory discretion in Lopez v. Davis, 531 U.S. 230 (2001). Relying on the decision of a Ninth Circuit panel in Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), Gatewood filed this petition for a writ of habeas corpus, seeking early

release and arguing that the regulation is invalid because the BOP failed to articulate an adequate rationale in the administrative record. The district court[1] denied habeas relief, concluding that we would not follow the decision in <u>Arrington</u>. The district court was correct. Accordingly, we affirm.

**I.**

This issue has a long administrative and judicial history that we will summarize as briefly as possible to adequately explain our decision. Congress amended the statute in 1994 to encourage federal inmates to participate in drug abuse programs. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322 § 32001, 108 Stat. 1796, 1897. 18 U.S.C. § 3621(e)(2) provides in relevant part:

> **(B) Period of custody.** -- The period a prisoner *convicted of a nonviolent offense* remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

(Emphasis added). In 1995, BOP published an interim rule implementing this statute. As relevant here, the rule provided that an inmate who completes a drug abuse program "may be eligible for early release . . . unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. 924(c)(3)." 28 C.F.R. § 550.58 (1995); <u>see</u> 60 Fed. Reg. 27695 (May 25, 1995). Two months later, BOP issued Program Statement No. 5162.02 (July 24, 1995), detailing how it would apply this "crime of violence" standard to scores of federal criminal offenses.

---

[1]The HONORABLE WILLIAM R. WILSON, JR., United States District Judge for the Eastern District of Arkansas, adopting the Report and Recommendation of the HONORABLE BETH DEERE, United States Magistrate Judge for the Eastern District of Arkansas.

As amended in April 1996, sections 7-11 of the Program Statement created multiple offense categories -- those "that are crimes of violence in all cases," those "that may be crimes of violence depending on" the base offense level or specific offense characteristic determined at sentencing, and those "that may be crimes of violence depending on a variety of factors."

Inmates upset with these restrictions sued, seeking court-ordered early releases. Though the Program Statement clarified that BOP was exercising its discretion based on a broad range of factors, a majority of circuits concluded that a rule based on "crimes of violence" was invalid as applied to two numerically-significant types of offenses -- felon-in-possession convictions under § 922(g) because, some circuits concluded, characterizing this offense as a crime of violence conflicted with prior judicial decisions, see, e.g., Davis v. Crabtree, 109 F.3d 566, 569 (9th Cir. 1997); and convictions for drug trafficking under 21 U.S.C. § 841 where the sentence was enhanced for possessing a dangerous weapon during the offense because, this court and others concluded, BOP could "look only to the offense of conviction . . . and not to sentencing factors . . . in determining whether an offender was convicted of a nonviolent offense." Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998).

Responding to these conflicting court decisions, BOP issued an amended interim rule that "avoids this complication by using the discretion allotted to the Director . . . in granting a sentence reduction." 62 Fed. Reg. 53690 (Oct. 15, 1997). The new rule, 28 C.F.R. § 550.58(a)(1), provided in relevant part: "As an exercise of the discretion vested in the Director . . . the following categories of inmates are not eligible for early release: . . . (vi) Inmates whose current offense is a felony:

> (A) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or

> (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon . . .  or

(C) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or

(D) That by its nature or conduct involves sexual abuse offenses committed upon children."

At the same time, BOP published Program Statement 5162.04 (Oct. 9, 1997), which rearranged the scores of offenses declared always or sometimes ineligible in the prior Program Statement into "Offenses Categorized as Crimes of Violence" in § 6, and "Offenses That at the Director's Discretion Shall Preclude an Inmate's Receiving Certain Bureau Program Benefits" in § 7. Felon-in-possession offenses under 18 U.S.C. § 922(g) and drug trafficking offenses with a sentence enhancement for use of a firearm were included in different subparts of § 7.

Numerous firearm offenders quickly challenged the amended rule, producing another conflict in the circuits. The Supreme Court granted certiorari and resolved this conflict in Lopez. Affirming this Court's decision in Bellis v. Davis, 186 F.3d 1092 (8th Cir. 1999), the Court concluded:

> Having decided that the [BOP] may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez is permissible. [BOP] reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

531 U.S. at 244. However, the Court declined to consider whether BOP in publishing the 1997 amended interim rule complied with the notice and comment requirements of the Administrative Procedure Act ("APA"). Id. at n.6.

In the wake of <u>Lopez</u>, the Ninth Circuit concluded that the 1997 interim rule failed to comply with the notice and comment requirements of 5 U.S.C. § 553(b) and (d) and was therefore invalid.  <u>Paulsen v. Daniels</u>, 413 F.3d 999 (9th Cir. 2005).  But by then, BOP had promulgated the amended interim rule as a final rule, after notice and comment, which cured that procedural defect.  <u>See</u> 65 Fed. Reg. 80745 (Dec. 22, 2000), codified at 28 C.F.R. § 550.58(a); <u>Johnson v. Holinka</u>, 2007 WL 1446476, at *3 (D. Minn. May 14, 2007).  That set the stage for the decision in <u>Arrington</u>, where the Ninth Circuit panel held the final rule "invalid" under 5 U.S.C. § 706(2)(A) because the BOP "failed to set forth a rationale for its decision to categorically exclude prisoners convicted of [firearm possession] offenses." 516 F.3d at 1114.  The panel rejected both rationales BOP put forth in defending the regulation -- a public safety rationale because it was a *post hoc* rationalization of appellate counsel "entirely absent from the administrative record," <u>Id.</u> at 1113; and a uniformity rationale because, though articulated in the administrative record, "it provides no explanation for why [BOP] exercised its discretion" by categorical exclusion rather than categorical eligibility.  <u>Id.</u> at 1113-14.  We find this reasoning unpersuasive and, though purporting to be based on an open procedural issue, contrary to the Supreme Court's decision in <u>Lopez</u>.

## II.

The APA provides that a reviewing court must set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).[2]  Because this is a deferential standard, "the orderly

---

[2]18 U.S.C. § 3625 provides that 5 U.S.C. §§ 554, 555, and 701-706 "do not apply" to early-release decisions.  We held in <u>Martin</u> that § 3625 does not preclude judicial review of BOP rulemaking under 5 U.S.C. § 553.  133 F.3d at 1079.  The Supreme Court in <u>Lopez</u> agreed.  531 U.S. at 240. But § 3625 may well preclude judicial review of BOP decisions applying the final rule and Program Statement to particular inmates.  <u>See</u> <u>Sesler v. Pitzer</u>, 110 F.3d 569, 572 n.5 (8th Cir. 1997).

functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." SEC v. Chenery Corp., 318 U.S. 80, 94 (1943). "The courts may not accept appellate counsel's *post hoc* rationalizations for agency action." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962). However, courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc., v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

These general principles, like 5 U.S.C. § 706(2)(A) itself, apply to both agency rulemaking and adjudication that is subject to the APA. But most Supreme Court cases applying these principles -- such as Chenery, Burlington Truck Lines, and Bowman -- involved agency adjudications conducted under 5 U.S.C. §§ 556-57 (or their APA predecessor), which require that agency decisions be based on the administrative record, and define what that record must include. This case involves agency rulemaking under 5 U.S.C. § 553, which provides only that the agency shall publish notice of the proposed rulemaking, afford interested persons an opportunity to participate, and "incorporate in the rules adopted a concise general statement of their basis and purpose," § 553(c). The Supreme Court has repeatedly emphasized "that generally speaking this section of the Act established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures." Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 524 (1978), and cases cited. Under § 553, an agency determination need not be made "on the record" unless the statute being applied so requires. United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 756-57 (1972). Thus, the Ninth Circuit panel in Arrington erred when it disregarded the BOP's public safety rationale simply because the court could not find that rationale in an "administrative record" which the court never defined but seemed to limit to the BOP's Federal Register notice in 2000 finalizing the previously interim rule.

Though rulemaking decisions, which are prospective and legislative in nature, need not be made on a confined administrative record, they still must be reviewed under § 706(2)(A) and "upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983); see Menorah Med. Ctr. v. Heckler, 768 F.2d 292, 295 (8th Cir. 1985).[3] In State Farm, the Court refused to enforce an agency order rescinding a prior rule, explaining that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." 463 U.S. at 42.[4] We have construed State Farm as requiring a fuller explanation when "a new rule reflects a departure from the agency's prior policies." Macon County Samaritan Mem'l Hosp. v. Shalala, 7 F.3d 762, 765-66 (8th Cir. 1993). Here, the BOP has consistently sought to implement the same substantive policy in the face of continued judicial resistance. In these circumstances, it is appropriate to discern the reasons for the agency's final rule from the various prior interim rules, Program Statements, and litigation positions reflecting that consistent policy. The Supreme Court discerned that public safety was the basis for the BOP's exclusion of firearm offenders and concluded that the agency's rule was *substantively* reasonable in Lopez, 531 U.S. at 244. That, we conclude, is all 5 U.S.C. §§ 553(c) and 706(2)(A) require. Accord Harrison v. Lamanna, 19 F. App'x 342 (6th Cir. 2001) (unpublished).

Moreover, we have no difficulty concluding, as the Court obviously did in Lopez, that public safety was the contemporaneous rationale for the interim and final

---

[3]The Court applied a related principle in Investment Co. Institute v. Camp, 401 U.S. 617, 627-28 (1971), giving no deference to an agency rule that was not adequately justified and then concluding that the rule conflicted with the governing statute. Of course, there is a significant difference between giving a rule little deference because it is poorly explained and invalidating the rule for that reason.

[4]The underlying statute in State Farm did require a record of the rulemaking proceedings to be made and submitted to a reviewing court. 463 U.S. at 43-44.

rules, and not merely a *post hoc* rationalization by appellate counsel.  The categories of offenses in the April 1996 amended Program Statement made it clear that BOP decided to exclude, not only those convicted of violent offenses, but also those whose offenses, either by inherent nature *or by the manner in which they were committed*, demonstrated a potential for violent behavior that made the inmate unsuitable for early release on public safety grounds.

When some courts ruled that certain of these categories could not be declared "crimes of violence," BOP recognized that it would need to justify at least some of its categorical exclusions on broader discretionary grounds. That was accomplished in the 1997 amended interim rule, adopted in 2000 as the final rule.  But the categories of exclusion remained constant, and the rationale continued to be BOP's interest in protecting public safety.  For example, in discussing the category, "Criminal Offenses with a Specific Offense Characteristic Enhancement," the 1997 Program Statement explained that "an inmate who was convicted of manufacturing drugs . . . and received a two-level enhancement for possession of a firearm" is ineligible for the early release benefit because possession of a dangerous weapon during a drug offense "poses a serious potential risk that force may be used against persons or property."  PS 5162.04, § 7(b), at p.11-12; accord PS No. 5162.02, at 7 (BOP Apr. 23, 1996).

When the agency has articulated and acted on a consistent rationale throughout the course of a lengthy informal rulemaking process, the final rule is not arbitrary and capricious because the rationale was not fully reiterated in the final agency action.  In Lopez, the Supreme Court upheld the substantive reasonableness of both the rule and its rationale. See 531 U.S. at 244.  The Court did not thereby "supply a reasoned basis for the agency's action that the agency itself has not given."  State Farm, 463 U.S. at 43.  Indeed, courts had previously recognized that BOP adopted the public safety rationale *before* the 1997 interim regulation was promulgated, see Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997), cert. denied, 523 U.S. 1108 (1998), and reiterated this rationale before the rule was made final in 2000, see Bellis, 186 F.3d

at 1095.  Particularly given the agency's primary public safety mission, there is simply no reason to suspect that public safety was not the actual basis for its interim and final rules.  See Auer v. Robbins, 519 U.S. 452, 462 (1997).

Though it may be of only derivative importance, we also conclude that the BOP's uniformity rationale justified the amended interim and final rules, just as uniformity was a legitimate rationale in Macon County, 7 F.3d at 766.  By 1997, some courts had rejected the BOP's public-safety-driven categories of offenders to be excluded if the offenses they committed were not "crimes of violence."  When the agency concluded that public safety nonetheless justified exercising its substantial statutory discretion to exclude these offenders, it could only continue to uniformly apply its substantive policy if it published an amended rule adopting a broader discretionary basis for its categorical exclusions.  Uniformity in this context was not a neutral either/or proposition.  The agency had strong interests -- both substantive and administrative -- in applying its substantive policy decisions uniformly to its nationwide inmate population.

For these reasons, the judgment of the district court is affirmed.

_____