**Albert GARDNER, Appellant**

v.

**J. GRANDOLSKY, Warden.**

No. 09–1742.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 13, 2009.

Opinion filed: Oct. 26, 2009.

Albert Gardner, Fort Dix FCI, Fort Dix, NJ, pro se.

Paul A. Blaine, Office of the United States Attorney Camden Federal Building & Courthouse, Camden, NJ, for Appellee.

Before: FISHER, JORDAN and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Albert Gardner appeals *pro se* from an order by the United States District Court for the District of New Jersey denying his petition for a writ of habeas corpus. For the following reasons, we will affirm the District Court's decision.

### I.

In 2006, Gardner pleaded guilty to one charge of possession with intent to distribute cocaine hydrochloride. The United States District Court for the District of Minnesota sentenced him to a 30 month term of imprisonment for that charge, a 27 month term of imprisonment for violating a previously-imposed term of supervised release, and a three year term of supervised release. The sentence was based, in part, on a two-level enhancement for possession of a dangerous weapon. *See* U.S.S.G. § 2D1.1(b)(1). The sentencing judge recommended that Gardner partici-

pate in the Residential Drug Abuse Treatment Program ("RDAP"), if eligible.

Gardner is imprisoned at the Federal Correctional Institution at Fort Dix, New Jersey, and was accepted into that institution's RDAP. However, Gardner was advised that successful completion of the RDAP would not make him eligible for early release because a Bureau of Prisons ("BOP") regulation, 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000), categorically excludes felons whose offense involved possession of a firearm. Gardner challenged the prison's decision through the prison's available administrative procedures without success. In December 2008, Gardner filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the District of New Jersey.

The District Court denied the petition and Gardner filed this timely *pro se* appeal.

### II.

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We review *de novo* the District Court's denial of habeas corpus relief, and review findings of fact for clear error. *Vega v. United States*, 493 F.3d 310, 314 (3d Cir.2007).

### A.

Gardner argues that the BOP regulation, which categorically excludes felons whose offense involved possession of a firearm from eligibility for a sentence reduction, 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000), is "arbitrary and capricious" in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Before we consider the merits of Gardner's APA claim, we will briefly review the relevant administrative and judicial history that culminated in the current regulation.

In 1994, to encourage prisoner participation in substance abuse treatment programs such as the RDAP, Congress authorized the BOP to reduce the sentence of prisoners "convicted of a nonviolent offense" by up to one year upon successful completion of the program. *See* 18 U.S.C. § 3621(e)(2)(B). However, Congress did not choose to define the term "nonviolent offense." Accordingly, the next year, the BOP published an implementing regulation. In it, the BOP excluded from eligibility for early release those prisoners convicted of a "crime of violence" as defined in 18 U.S.C. § 924(c).[1] *See* 28 C.F.R. § 550.58 (1995). The BOP also issued a Program Statement, which further restricted eligibility for early release by including additional offenses—specifically, drug offenses under 21 U.S.C. §§ 841 and 846 with sentencing enhancements for possession of a dangerous weapon. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement No. 5162.02: Definition of Term "Crimes of Violence," § 9 (April 23, 1996). The additional offenses generally had not been regarded by federal courts to be crimes of violence within the meaning of 18 U.S.C. § 924(c). However, the BOP explained that it considered a drug offense with a weapons possession sentencing enhancement to be a "crime of violence" because "possession of a dangerous weapon during the commission of a drug offense poses a substantial risk that force may be used against persons or property." *Id.*

The BOP's Program Statement gave rise to substantial litigation, ultimately leading to a split among the United States Courts of Appeals over the validity of the BOP's attempt to add to the "crimes of violence" definition set forth in § 924(c). *Compare, e.g., Pelissero v. Thompson,* 170 F.3d 442, 447 (4th Cir.1999) (upholding the regulation and Program Statement), with *Roussos v. Menifee,* 122 F.3d 159, 164 (3d Cir.1997) (finding the Program Statement invalid). To resolve the split and achieve greater uniformity in applying its regulation, the BOP published an interim regulation in 1997. The BOP removed the reference to the statutory definition of "crimes of violence" in § 924(c) and abandoned its effort to define the term "nonviolent offense." Instead, the BOP's new regulation provided for the categorical denial of eligibility for early release to certain classes of prisoners—including, as in the 1995 version, prisoners convicted of drug offenses with sentencing enhancements for the possession of a firearm—but this time, "[a]s an exercise of the discretion vested in the Director." 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); *see also* Drug Abuse Treatment and Intensive Confinement Center Programs: Early Release Consideration, 62 Fed.Reg. 53690 (Oct. 15, 1997).

The 1997 interim regulation gave rise to more litigation, this time concerning whether the categorical exclusion of certain classes of prisoners was a permissible exercise of the BOP Director's discretion. The United States Supreme Court ultimately resolved the issue in *Lopez v. Davis,* 531 U.S. 230, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), by upholding the BOP's 1997 interim regulation. The *Lopez* court held that the federal statute, 18 U.S.C. § 3621(e)(2)(B), grants the BOP the discretion to categorically exclude classes of prisoners from eligibility for early release. *Lopez,* 531 U.S. at 241, 121 S.Ct.

---

1. More specifically, the regulation denied early release to inmates whose "current offense is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)," as well as to inmates who had a prior state or federal conviction for homicide, forcible rape, robbery, or aggravated assault. *See* Drug Abuse Treatment Programs: Early Release Consideration, 60 Fed.Reg. 27692 (May 25, 1995).

714. The Supreme Court further held that excluding the class of prisoners convicted of a felony involving possession of a dangerous weapon is a permissible exercise of that discretion:

> Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez [28 C.F.R. § 550.58(a)(1)(vi)(B) (1997)] is permissible. The Bureau reasonably concluded that an inmates's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

*Id.* at 244, 121 S.Ct. 714.

The BOP's 1997 interim regulation became final without change in 2000, after a notice and comment period held pursuant to the APA. *See* 5 U.S.C. § 553; *see also* Drug Abuse Treatment and Intensive Confinement Center Programs: Early Release Consideration, 65 Fed.Reg. 80745 (Dec. 22, 2000). As it had in its 1997 Federal Register notice, the BOP explained that it revised the 1995 version of the regulation to resolve the split among the Courts of Appeals and to ensure uniformity in applying its regulation. *See* Drug Abuse Treatment and Intensive Confinement Center Programs: Early Release Consideration, 65 Fed.Reg. 80745 (Dec. 22, 2000). Among other things, the current BOP regulation continues to provide that "[a]s an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release: ... [i]nmates whose current offense is a felony ... [t]hat involved the carrying, possession, or use of a firearm or other dangerous weapon...." 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000).

## B.

■ Gardner, a prisoner whose offense is a felony involving possession of a firearm, was denied eligibility for early release pursuant to 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000). He challenges the regulation as "arbitrary and capricious" under the APA. *See* 5 U.S.C. § 706(2)(A).

■ The scope of judicial review of agency rulemaking under the APA's "arbitrary and capricious" standard is "narrow, and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may nevertheless "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *State Farm*, 463 U.S. at 43, 103 S.Ct. 2856. A court may conclude that a regulation is arbitrary and capricious only "if the agency relied on facts other than those intended by Congress, did not consider 'an important aspect' of the issue confronting the agency, provided an explanation for its decision which 'runs counter to the evidence before the agency,' or is entirely implausible." *Rite Aid of Pa., Inc., v. Houstoun*, 171 F.3d 842, 853 (3d Cir.1999).

In support of his claim that the BOP regulation is arbitrary and capricious, Gardner relies exclusively upon the recent decision by the Court of Appeals for the Ninth Circuit in *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir.2008). The *Arrington* court considered whether the BOP provided a sufficient rationale to support the final regulation's categorical exclusion of felons-in-possession from the early release program. The BOP argued that its regulation was not arbitrary and capricious be-

cause it promulgated the rule for the dual purposes of protecting the public safety and creating uniformity in application of the regulation, particularly after the split among the Courts of Appeals arose concerning the 1995 version of the regulation.

The *Arrington* court rejected both of the BOP's proffered rationales. It dismissed the public safety argument as a mere *"post hoc* rationalization," concluding that any mention of public safety was "entirely absent" from the administrative record. *Id.* at 1113; *see also Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) ("The courts may not accept appellate counsel's *post hoc* rationalization for agency action"). In contrast, although it found that the uniformity rationale appeared in the administrative record, the *Arrington* court concluded that the rationale did not sufficiently justify the BOP's action. The BOP could have chosen to achieve uniformity through methods other than a rule of exclusion, and the record did not explain why the agency chose that particular approach. *Arrington,* 516 F.3d at 1114. Thus, the Court of Appeals for the Ninth Circuit concluded that because "the administrative record contains no rationale explaining the Bureau's decision to categorically exclude prisoners with convictions involving firearms from eligibility for early release under § 3621(e) ....," the regulation is invalid.[2] *See Arrington,* 516 F.3d at 1112.

To date, *Arrington* is the sole case to conclude that the BOP's regulation is arbitrary and capricious in violation of the APA. In response to Gardner's claim, the Government argues that we should reject *Arrington* and instead follow the reasoning of the Court of Appeals for the Eighth Circuit in its recent decision *Gatewood v. Outlaw,* 560 F.3d 843 (8th Cir.2009). The *Gatewood* court determined that *Arrington* is "contrary to the Supreme Court's decision in *Lopez* " and held that the BOP provided sufficient justification for its regulation under the APA. *Gatewood,* 560 F.3d at 846.

According to *Gatewood,* the *Arrington* court unjustifiably and erroneously limited its consideration of what it called the "administrative record" to the BOP's Federal Register notice issued in 2000 when the BOP promulgated the final rule. *Id.* at 847. The Court of Appeals for the Eighth Circuit concluded that, in the administrative rulemaking context, the "administrative record" is simply not so limited. Rather, in considering the BOP's consistent efforts to implement its categorical exclusion of felons-in-possession from the early release program in the face of judicial resistance, "it is appropriate to discern the reasons for the agency's final rule from the various prior interim rules, Program Statements, and litigation positions reflecting that consistent policy." *Id.* Taken together, these sources demonstrate that the BOP was consistently motivated by a pub-

---

**2.** Perhaps in response to *Arrington,* the BOP recently issued another final regulation. 28 C.F.R. § 550.55 (effective March 16, 2009). The new regulation continues to categorically deny early release to prisoners convicted of a felony involving possession of a dangerous weapon. Drug Abuse treatment Program: Subpart Revision and Clarification and Eligibility of D.C.Code Felony Offenders for Early Release Consideration, 74 Fed.Reg. 1892 (Jan. 14, 2009); 28 C.F.R. § 550.55(b)(5)(ii).

In the Federal Register notice, the BOP made explicit its public safety rationale, stating "there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences." 74 Fed.Reg. 1895. The BOP also adopted the reasoning set forth in *Lopez. Id.*

lic safety rationale, and that rationale satisfies the APA's requirements.[3] *Id.* at 847.

## C.

Having closely considered the issue, we conclude that the BOP articulated a sufficient rationale for 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000) to satisfy the "arbitrary and capricious" standard set forth in APA § 706(2)(A). Although the BOP's public safety rationale was not explicit in the Federal Register notices for the 1997 or 2000 regulations, we conclude that the rationale may "reasonably be discerned" from the regulatory history and attendant litigation. *See State Farm,* 463 U.S. at 43, 103 S.Ct. 2856; *Gatewood,* 560 F.3d at 847.

As previously discussed, the BOP's efforts to categorically exclude felons convicted of possession of a dangerous weapon from eligibility for early release have remained consistent since 1995. The BOP amended the 1995 version of its regulation only because it could no longer uniformly apply it after the split among the Courts of Appeals developed concerning the BOP's Program Statement; the BOP expressly referred to the Circuit split in both its 1997 and 2000 Federal Register notices. *See* 62 Fed.Reg. 53690; 65 Fed.Reg. 80745, 80747. Because the litigation focused on the BOP's Program Statements, we find it both reasonable and appropriate to consider the Program Statements when discerning the agency's rationale for promulgating the 1997 and 2000 regulations. *See Gatewood,* 560 F.3d at 847.

The BOP Program Statements expressly provide that the BOP's contemporaneous rationale for the categorical exclusion has consistently been for the purpose of protecting public safety. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5162.04: Categorization of Offenses, § 7(b) (Oct. 9, 1997); Program Statement 5162.02, § 9. Courts reviewing the regulation have long recognized the BOP's public safety rationale. *See, e.g., Pelissero,* 170 F.3d at 445 (quoting the district court's conclusion that it is "entirely reasonable and certainly not arbitrary for the BOP to equate gun possession and drug dealing with violence, thus supporting its interpretation of not being a 'nonviolent offense'"); *Venegas v. Henman,* 126 F.3d 760, 765 (5th Cir.1997) (the BOP's "determination that a sufficient nexus exists between the offenses at issue and a substantial risk of violence is a valid exercise of discretion which this Court will not disturb").

Indeed, we find it extremely significant that in *Lopez,* the Supreme Court upheld both the reasonableness of the 1997 interim regulation *and* the BOP's public safety rationale. *Lopez,* 531 U.S. at 244, 121 S.Ct. 714 (The BOP "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence."); *Gatewood,* 560 F.3d at 848 ("[W]e have no difficulty concluding, as the Court obviously did in *Lopez,* that public safety was the contemporaneous rationale for the interim and final rules...."). The *Arrington* court discounted this aspect of *Lopez,* holding that *Lopez* addressed only the BOP's authority to pass the rule, not whether the BOP complied with the APA when it promulgated the rule. *Arrington,* 516 F.3d at 1115; *cf. Gatewood,* 560 F.3d at 848 (noting that there "is simply no reason to suspect that public safety was

---

**3.** The *Gatewood* court also found that the BOP had strong substantive and administrative interests in applying its policy decisions uniformly throughout its institutions, providing an additional justification for the regulation. *Id.* at 848–49.

not the actual basis" for the regulation given the BOP's "primary public safety mission"). We, however, cannot so readily conclude that the Supreme Court failed to consider whether the BOP's proffered public safety rationale was legitimate, and not a mere *post hoc* rationalization, when evaluating the rationale to determine the regulation's validity.

Finally, the language of the regulation itself facially manifests a concern for protecting the public safety. In addition to felons-in-possession, it also denies eligibility for early release to various categories of prisoners whose offenses manifest a potential for violent behavior, such as prisoners with a prior conviction for homicide, forcible rape, robbery, aggravated assault, or child sexual abuse; prisoners whose current offense is a felony that has an element of actual, attempted, or threatened use of physical force against a person or property; and prisoners whose current offense "by its nature or conduct" presents a serious potential risk of physical force against a person or property, or involves child sexual abuse offenses. 28 C.F.R. § 550.58(a)(1)(iv), (vi)(A), (C), (D) (2000); *see also Gatewood,* 560 F.3d at 848.

■ In sum, where, as here, the "agency has articulated and acted on a consistent rationale throughout the course of a lengthy informal rulemaking process, the final rule is not arbitrary and capricious because the rationale was not fully reiterated in the final agency action." *Gatewood,* 560 F.3d at 848; *cf., Arrington,* 516 F.3d at 1114. For all of these reasons, we hold that 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000) is not arbitrary and capricious within the meaning of § 706 of the APA. Accordingly, the District Court properly denied Gardner's petition for a writ of habeas corpus.

D.

■■ Gardner also argues for the first time on appeal that the BOP erroneously applied the regulation to him because his "offense of conviction does not fall within the expressed terms and definition for which the regulation was designed, and the regulation in this instance has, otherwise, been applied incorrectly." Gardner did not raise this claim in his habeas corpus petition and the District Court therefore did not have the opportunity to consider it in the first instance. *See* District Court Op. at 3, n. 3 ("Petitioner does not argue that his offense does not fall within the terms of the regulation or that the regulation otherwise has been applied to him incorrectly."). We generally do not consider arguments raised for the first time on appeal, *see Inductotherm Indus., Inc. v. U.S.,* 351 F.3d 120, 126 n. 9 (3d Cir.2003), and will not do so in this case.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.