**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3817
_____

ORLANDO DEJESUS, Father and next of kin of Blaise DeJesus, deceased;
PAULETTE DEJESUS, Mother and next of kin of Blaise DeJesus, deceased,
Appellants

v.

THE STATE OF DELAWARE, acting through The Delaware Department of
Corrections; LT. TODD DRACE, Individually and in his capacity as a Delaware
Department of Corrections Officer; SGT JOHN KIRLIN, Individually and in his capacity
as a Delaware Department of Corrections Officer; TIFFANI STARKEY, Individually
and in her capacity as a Delaware Department of Corrections Officer;
COMMUNICATIONS COMMUNITY SUPPORT PROGRAMS, INC.

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-15-cv-01065)
District Judge: Hon. Colm Connolly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 29, 2020

Before: SHWARTZ, PHIPPS, and SCIRICA, *Circuit Judges*.

(Filed: October 29, 2020)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

_____

SHWARTZ, Circuit Judge.

Orlando and Paulette DeJesus, parents and next of kin of Blaise DeJesus, ("Plaintiffs"), appeal from the District Court's order granting summary judgment for correctional officers Todd Drace, John Kirlin, and Tiffany Starkey ("Defendants"), on claims arising out of Blaise DeJesus's suicide while incarcerated at James T. Vaughn Correctional Center ("Vaughn").  Plaintiffs argue that the Court overlooked their claim that Defendants were deliberately indifferent to DeJesus's serious medical need and ruled instead that Defendants were not deliberately indifferent to his vulnerability to suicide—a claim they did not pursue.  Plaintiffs are correct, so we will remand for the Court to determine whether Defendants are entitled to summary judgment on Plaintiffs' claim that Defendants were deliberately indifferent to DeJesus's serious medical need.

I

DeJesus violated his probation and, on August 1, 2014, was sentenced to addiction rehabilitation.  He exhibited signs of withdrawal and was placed in Vaughn's infirmary, where he was treated for four days.  He was then ordered transferred into Vaughn's general inmate housing.  After prison officials realized that DeJesus's brother served as a prison officer at Vaughn, DeJesus was placed in the Segregated Housing Unit ("SHU"), at 3:30 p.m. on August 5, 2014.  At 9:35 p.m., DeJesus's body was found hanging, and at 10:05 p.m., he was pronounced dead.

2

Four inmates described what they heard and/or saw from the time DeJesus entered the SHU until his death.[1] According to these inmates, DeJesus told Defendants that: (1) he did not belong in the SHU; (2) he could not "take being in the [SHU],"JA090; (3) he needed to speak to someone; (4) he needed to make a phone call; (5) he felt anxious; (6) he was going through withdrawal; (7) he needed help; and (8) they should call mental health and ask for medical help on his behalf.

The inmates testified that officers "brush[ed] [] off," or "blew [] off," DeJesus's repeated complaints and requests. JA085, JA090. This included testimony that DeJesus cried during a discussion with one officer, who then laughed about it with another officer, and that DeJesus's crying and yelling about his needs was "loud" and could be heard by several inmates in their housing area and, presumably, by the officers. JA079. One inmate noted that DeJesus was "disheveled," "wasn't in his right state of mind," JA085, was "not all mentally stable," JA087, and appeared to be having a panic attack.

Other inmates stated that they tried to get the officers' attention when DeJesus was in distress and told the officers they thought DeJesus needed help. More specifically, one inmate stated that "four or five different inmates said something to the correctional officers to [] get [DeJesus] help," and he told one officer himself that DeJesus was "going through something . . . and that he need[ed] to see somebody." JA087. Further, the inmates noted that the officers were not completing rounds and typical checks on the inmates. Three of the inmates testified that they saw a different inmate banging on the

---

[1] Because we are reviewing a summary judgment ruling, we construe all facts in the light most favorable to Plaintiffs. Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).

window of the prison officials' office when he saw that DeJesus had hung himself and that the officers did not immediately respond. Following DeJesus's death, several inmates who interacted with DeJesus, observed him, or thought the officers ignored his requests for help filed grievances with prison officials.

The prison investigated after DeJesus's death and discovered that the routine area and cell checks were not performed for two and a half hours on the night of DeJesus's suicide, consistent with the inmates' testimony. One officer was suspended as a result, and SHU inmates testified that it was typical for the officers to neglect the required checks.

II

Plaintiffs filed suit in the District Court, asserting, among other things, that prison officials failed to provide alternative placement or medical treatment, failed to perform standard well-being checks, and thus acted with deliberate indifference to DeJesus's serious medical need.[2] They did not allege that Defendants were deliberately indifferent to a vulnerability to suicide. Defendants moved for summary judgment, arguing that the record showed that DeJesus had no particular vulnerability to suicide. In their responding brief, Plaintiffs explained that their argument was not specific to vulnerability to suicide and asserted that they had "established a sufficient record to show [Defendants] were deliberately indifferent to [DeJesus's] serious medical condition (aside from suicide[] itself)." JA033-034 (emphasis omitted).

---

[2] Plaintiffs asserted three causes of action in their complaint but only Count II, their claim for relief under 42 U.S.C. § 1983 based on Defendants violation of the Eighth Amendment's prohibition of cruel and unusual punishment is at issue on appeal.

4

The District Court granted Defendants' motion, analyzing only whether DeJesus exhibited a particular vulnerability to suicide, and thus, did not examine whether the record showed Defendants were deliberately indifferent to DeJesus's serious medical need. Plaintiffs appeal.

III[3]

We first examine whether Plaintiffs brought a claim based on deliberate indifference to a serious medical need, as distinct from a claim that Defendants were deliberately indifferent to a vulnerability to suicide. See Orie v. Dist. Att'y Allegheny Cnty., 946 F.3d 187, 195 (3d Cir. 2019) (noting "[w]e generally do not consider arguments raised for the first time on appeal" (quoting Gardner v. Grandolsky, 585 F.3d 786, 793 (3d Cir. 2009))). Plaintiffs did.

First, the Complaint alleged deliberate indifference to a serious medical need, and not deliberate indifference to vulnerability to suicide. Second, in response to Defendants' argument at summary judgment that DeJesus had not exhibited vulnerability to suicide, Plaintiffs stated that they were pursuing a claim for deliberate indifference to a serious medical need. Thus, Plaintiffs sought relief based on deliberate indifference to a serious medical need. The District Court nevertheless ruled on whether the record supported a

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's order granting summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

claim for deliberate indifference to vulnerability to suicide, which Plaintiffs did not allege.

Plaintiffs do not dispute the District Court's ruling with respect to vulnerability to suicide. Instead, they argue that they sought relief based on Defendants' deliberate indifference to DeJesus's serious medical need, and the Court erred because it did not evaluate that claim. We agree. This oversight is not harmless because the two bases for liability have separate elements.

To hold prison officials liable for failure to prevent a suicide, a plaintiff must establish that: (1) the inmate had a "particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted;" (2) the prison officials "knew or should have known" of that vulnerability; and (3) those officers "acted with reckless or deliberate indifference" to the inmate's particular vulnerability. Palakovic v. Wetzel, 854 F.3d 209, 223-24 (3d Cir. 2017) (internal quotation marks and citations omitted). This test evolved out of our evaluation of deliberate indifference to serious medical need claims, but it governs cases where plaintiffs allege prison officials are liable for an inmate's suicide. See Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 320 (3d Cir. 2005) ("A particular vulnerability to suicide represents a serious medical need"); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) (explaining that the definition of deliberate indifference to serious medical need, from Estelle v. Gamble, 429 U.S. 97, 104 (1976), "provided the theoretical underpinnings" for recognizing that particular vulnerability to suicide is a type of serious medical need). "While we have recognized that a particular vulnerability to

6

suicide qualifies as a serious medical need, . . . a vulnerability to suicide is not the sole need on which [a] claim [can be] focused." Palakovic, 854 F.3d at 227 (citation omitted).

A plaintiff who alleges defendants were deliberately indifferent to his serious medical need must show that (1) he had a serious medical need,[4] (2) defendants were deliberately indifferent to that need,[5] and (3) the deliberate indifference caused harm or physical injury to the plaintiff.[6] See, e.g., Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003); Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987). A deliberate indifference to a serious medical need claim can apply in various inmate medical situations, including failing to provide adequate mental health services.

---

[4] A medical need is serious if (1) it "has been diagnosed by a physician as requiring treatment," Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted), (2) it "is so obvious that a lay person would easily recognize the necessity for a doctor's attention," id. ; or (3) where the denial of treatment would result in the "unnecessary and wanton infliction of pain," Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted), or a life-long handicap or permanent loss, Lanzaro, 834 F.2d at 347.

[5] Deliberate indifference can be shown where a defendant knew the plaintiff had a need for medical care but refused to provide that care, Palakovic, 854 F.3d at 228 (citation omitted), denies "reasonable requests for medical treatment . . . [when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'" id. at 228 (alterations in original) (quoting Lanzaro, 834 F.2d at 346), delays necessary medical treatment for non-medical reasons, chooses "an easier and less efficacious treatment of the inmate's condition," or "prevent[s] an inmate from receiving recommended treatment for serious medical needs," Lanzaro, 834 F.2d at 346-47 (internal quotations omitted).

[6] A plaintiff must show that prison officials were aware of and "recklessly disregard[ed] a substantial risk of serious harm." Palakovic, 854 F.3d at 227 (quoting Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009)); see also Farmer v. Brennan, 511 U.S. 825, 837 (1994) (explaining that a prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety").

7

Palakovic, 854 F.3d at 227-29, 231-32.  An analysis of a vulnerability to suicide claim focuses more narrowly on evidence showing a strong likelihood of suicide.  Id. at 223-24.

Here, Plaintiffs "sought to hold prison officials . . . accountable for failing to meet [DeJesus's] serious need for [medical care]," and did not seek relief based on vulnerability to suicide.  Id. at 227. Because these are two different claims, and the District Court did not examine one of them, namely Plaintiffs' claim of deliberate indifference to a serious medical need, we will remand.

IV

For the foregoing reasons, we will remand for further proceedings consistent with this opinion.[7]

---

[7] Judge Phipps agrees that in granting summary judgment for the prison guards, the District Court did not address the question of whether they acted with deliberate indifference to a serious medical need, but due to the fully developed summary judgment record and briefing, he would, on de novo review, resolve that issue through affirmance of the District Court's judgment, and on that basis, he respectfully dissents.  See Laurel Gardens, LLC v. McKenna, 948 F.3d 105, 116 (3d Cir. 2020) ("Generally, we may affirm on any ground supported by the record, and an appellee may urge affirmance on such a ground even if the district court overlooked it or it involves an attack on the district court's reasoning." (emphasis added)).