STEVE KIM, U.S. MAGISTRATE JUDGE
I.
INTRODUCTION
Petitioner James Harwin is a prisoner in the custody of the federal Bureau of Prisons (BOP) and a former firearms dealer convicted of unlawfully transferring firearms in violation of 26 U.S.C. § 5861(e). He claims that because his offense was nonviolent, the BOP had to grant him early release after he completed its Residential Drug Abuse Treatment Program (RDAP) in accordance with 18 U.S.C. § 3621. That statute gives the BOP discretion to reduce the sentences of prisoners who participate in RDAP if they were convicted of a "nonviolent offense." 18 U.S.C. § 3621(e)(2)(B). But the BOP's exercise of this discretion does not depend on whether an offender's conviction meets the categorical definition of "crime of violence." Of course, an inmate convicted of a violent crime as defined by federal statutes *974 like 18 U.S.C. § 924(c)(3) would naturally be ineligible for early release under § 3621. But even if a prisoner is statutorily eligible for early release consideration, the BOP may deny early release in its discretion to certain categories of nonviolent offenders. Those categories include prisoners convicted of an offense involving the "carrying, possession, or use" of a firearm or that "by its conduct"-if not "by its nature"-presented a serious potential risk of physical violence. 28 C.F.R. § 550.55(b)(5)(ii), (b)(5)(iii) (2016). So even if Petitioner's offense were not a crime of violence, the BOP still reasonably applied these two early-release exclusions in its regulation to Petitioner's firearms offense under § 5861(e).
Whether released early or not, Petitioner also seeks to block the BOP from notifying state and local authorities of his eventual release from federal custody. Currently, his projected release date is sometime in September 2019. Under 18 U.S.C. § 4042(b)(2), the BOP may disclose to law enforcement authorities the names, criminal histories, and conditions of supervised release of federal prisoners convicted of a "crime of violence" as defined by § 924(c)(3). See 18 U.S.C. § 4042(b)(3). For the same reasons that Petitioner considers his conviction nonviolent for early-release purposes, he contends that notification under § 4042(b) is prohibited because he committed no crime of violence. Yet he presents no evidence that the BOP has reached a "final" agency decision to make notification of Petitioner's release. And in any event, he fails to show that such statutory notification meets the "in custody" requirement for federal habeas jurisdiction. For these reasons, the Court lacks jurisdiction under § 2241 to block the BOP preemptively from notifying state and local authorities of Petitioner's eventual release from federal custody.
II.
DISCUSSION
To overturn the BOP's decision denying him early release, Petitioner must prove that it "is contrary to established federal law, violates the U.S. Constitution, or exceeds the statutory authority Congress vested in the agency." Staacke v. United States Sec. of Labor , 841 F.2d 278, 281 (9th Cir. 1988). Petitioner does not claim-nor could he-that he has a constitutional right to early release. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex , 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ; Jacks v. Crabtree , 114 F.3d 983, 986 n.4 (9th Cir. 1997). So Petitioner must show that the BOP either exceeded its statutory authority or violated "established federal law." He can do neither.
For his statutory claim, Petitioner contends that because his conviction is not a categorical "crime of violence," the BOP misapplied § 3621, which authorizes early release for prisoners convicted of a "nonviolent offense." 18 U.S.C. § 3621(e)(2)(B). True, the BOP found Petitioner ineligible for early release in part because it classified his offense as a crime of violence "in all cases." BOP Prog. Stmt. 5162.05 § 3.a (2009) (so classifying all offenses under § 5861 ). Whether that categorization under the BOP's agency policy is a permissible interpretation of § 3621 is debatable.[1] Compare United States v. Amparo , 68 F.3d 1222, 1224-25 (9th Cir. 1995) (possession of unregistered firearm in violation of *975 § 5861(d) is crime of violence), with Davis v. Crabtree , 109 F.3d 566, 569 (9th Cir. 1997) (felon-in-possession of firearm in violation of § 922(g) is not crime of violence). But even if Petitioner's offense is not a categorical crime of violence, that does not mean the BOP must grant him early release under § 3621.
Petitioner's argument to the contrary misunderstands the BOP's statutory authority and how it evolved. The agency's earliest efforts to exercise its authority under § 3621 predicated eligibility for early release on the definition of "crime of violence" under § 924(c)(3), see 28 C.F.R. § 550.58 (1995)-an approach that the Ninth Circuit invalidated. See Davis , 109 F.3d at 569. But since then, "the BOP dropped the reference to § 924(c)(3) and instead asserted its discretionary authority to determine eligibility for early release under § 3621(e)." Peck v. Thomas , 697 F.3d 767, 770 (9th Cir. 2012). This shift meant that the BOP could "disqualify otherwise statutorily eligible inmates" convicted of nonviolent offenses based on additional discretionary criteria having nothing to do with categorical definitions of "crime of violence." Id. Both the Supreme Court and Ninth Circuit then ratified this approach as consistent with Congress' grant of authority. See Lopez v. Davis , 531 U.S. 230, 244, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) ; Bowen v. Hood , 202 F.3d 1211, 1219-20 (9th Cir. 2000). So even if Petitioner's conviction is categorically nonviolent as he maintains, the BOP can still properly deny him early release without exceeding its statutory authority. While a conviction for a nonviolent offense is necessary for early-release eligibility, it is not alone sufficient. See Lopez , 531 U.S. at 242, 121 S.Ct. 714.
That leaves, then, only the question whether the BOP's denial of Petitioner's request "is contrary to established federal law." For this, the Court can look to the Administrative Procedure Act (APA) and review whether the BOP complied with its own regulation.[2] See, e.g., Inland Empire Pub. Lands Council v. U.S. Forest Serv. , 88 F.3d 754, 760 (9th Cir. 1996). In so doing, the Court evaluates whether the BOP's decision was "arbitrary [and] capricious" or an "abuse of discretion." 5 U.S.C. § 706(2)(A). But the "scope of review under the 'arbitrary and capricious' standard is narrow," and the Court is not free "to substitute its judgment for that of the agency." Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co. , 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In other words, the Court must presume agency action is valid and uphold it so long as there was a reasonable basis. See Sacora v. Thomas , 628 F.3d 1059, 1068 (9th Cir. 2010). Under this deferential standard of review, the BOP's denial was based on a reasonable interpretation of its regulation.
To begin with, the BOP found that Petitioner's offense was disqualifying as an "offense that, by its nature or conduct , present[ed] a serious potential risk of physical force." 28 C.F.R. § 550.55(b)(5)(iii) (emphasis added). The emphasized portion is important, for even if Petitioner's offense were nonviolent "by its nature," 18 U.S.C. § 924(c)(3)(B), and thus not a categorical crime of violence, the regulation separately permits the BOP to evaluate his offense "conduct" as well-meaning *976 the "particular facts relating to petitioner's crime." Leocal v. Ashcroft , 543 U.S. 1, 7, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). Through that lens, the BOP permissibly looked to Petitioner's "offense conduct described in [his] Presentence Investigation Report" and reasonably found that "transferring multiple firearms"-including machine guns with obliterated serial numbers-in violation of federal registration requirements presented "a serious potential risk that the illegally obtained firearms could be used against the person or property of another." (ECF 1 at 23). It is hard to find that assessment unreasonable. The Ninth Circuit itself has recognized that mere "possession of an unregistered firearm of the kind defined in [the National Firearms Act], even if by a non-felon, involves a [ ] blatant disregard for law and a substantial risk of improper physical force." United States v. Dunn , 946 F.2d 615, 621 (9th Cir. 1991). The BOP could thus surely decide that no matter the categorical "nature" of Petitioner's offense of conviction, his offense "conduct"-selling improperly registered and untraceable firearms, including machine guns with obliterated serial numbers-presented a serious potential risk of violence to the public.
The BOP also reasonably interpreted Petitioner's offense of illegal firearm transfer in violation of § 5861(e) as a crime involving the "carrying, possession, or use of a firearm." 28 C.F.R. § 550.55(b)(5)(ii). As already discussed, that exclusion does not depend on a categorical match with any statutory definition of "crime of violence." So contrary to Petitioner's argument, whether he could legally carry or possess firearms as a licensed firearms dealer at the time of his offense is beside the point. The disqualifying conduct of "carrying, possession, or use" of a firearm need not result in a freestanding conviction based on that specific conduct for the regulation to apply. See Lopez , 531 U.S. at 238, 121 S.Ct. 714 ( section 550.55(b)(5)(ii) applies so long as inmate "possessed a firearm in connection with [his] nonviolent offense[.]") (emphasis added); Peck , 697 F.3d at 775 (applicability of § 550.55(b)(5)(ii) does not require that regulation's prescribed conduct be a "crime of violence under § 924(c)(3)").
Nor should it matter that the text of this regulation says only "carrying, possession, or use" of firearms-not their "transfer." The lack of that word means only that the regulation is ambiguous, not that its application to a firearm transfer offense is prohibited. If the BOP's interpretation of an ambiguity in its own regulation is reasonable, the Court must uphold it. See Auer v. Robbins , 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Here, the BOP could reasonably decide that the crime of unlawfully transferring firearms necessarily involves the requisite "possession" under § 550.55(b)(5)(ii) : a person must naturally possess something, after all, in order to transfer it. And Petitioner does not deny that his crime involved the "carrying, possession and use" of firearms, only that those discrete actions were "lawful under Title 26" even if his later "transfer" of them turned out to violate § 5861(e). (ECF 1 at 18). But the fact of his possession-not its legality-is what matters. As a result, the BOP's decision denying Petitioner early release based on § 550.55(b)(5)(ii) was not an unreasonable interpretation of its regulation under the APA.
Finally, Petitioner's release-notification claim is not ripe for review under the APA, nor is it cognizable under § 2241. Petitioner presents no evidence that the BOP has rendered a "final" agency decision to notify law enforcement authorities of his eventual release under § 4042(b). 5 U.S.C. § 704 ; see *977 Bennett v. Spear , 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (non-final agency decision not reviewable under APA). And even if he had, Petitioner cannot show that such notification meets the "custody" requirement for habeas jurisdiction. See 28 U.S.C. § 2241(c)(3) ; Williamson v. Gregoire , 151 F.3d 1180, 1183-84 (9th Cir. 1998). Notification of release from custody "is merely a collateral consequence of conviction," not "the type of severe, immediate restraint on physical liberty necessary to render a petitioner 'in custody' " for § 2241 purposes. Henry v. Lungren , 164 F.3d 1240, 1242 (9th Cir. 1999). The Court thus lacks jurisdiction to review the release-notification claim.[3]
III.
CONCLUSION
For all these reasons, the Petition is denied with prejudice as to the early-release claim and dismissed for lack of jurisdiction as to the release-notification claim. Judgment dismissing this habeas action will be entered accordingly.[4]
IT IS SO ORDERED.

Since the BOP relied separately on its implementing regulation in addition to this policy statement, the outcome would not change here even if the program statement were invalid under Ninth Circuit precedent. See Peck v. Thomas , 787 F.Supp.2d 1145, 1154 (D. Or. 2011).

This is not to say that the Court may review every aspect of a BOP early-release decision. For instance, APA review of "discretionary determinations"-like individual placement in or expulsion from the RDAP-is foreclosed by 18 U.S.C. § 3625. Reeb v. Thomas , 636 F.3d 1224, 1227 (9th Cir. 2011). But legal issues underlying those determinations remain reviewable. See Rodriguez v. Copenhaver , 823 F.3d 1238, 1242 (9th Cir. 2016).

Because the Court lacks jurisdiction, it need not address Respondent's administrative exhaustion defense. (ECF 9 at 8). Even so, exhaustion would most likely be excused as futile given the BOP's agency policy classifying all § 5861 offenses as crimes of violence. See Ward v. Chavez , 678 F.3d 1042, 1045-46 (9th Cir. 2012) ; Williams v. Clark , 52 F.Supp.2d 1145, 1147 (C.D. Cal. 1999). The Court also need not address whether Petitioner could pursue his release-notification claim under a different cause of action. See, e.g., Bunn v. Conley , 309 F.3d 1002, 1007 (7th Cir. 2002). Whatever the possible basis for suit, if any, Petitioner may ultimately get no relief on the merits under binding Ninth Circuit precedent. See Amparo , 68 F.3d at 1225 (concluding that § 5861(d) conviction is categorical crime of violence); but see Evans v. Zych , 644 F.3d 447, 453 (6th Cir. 2011) (holding that § 5861(d) conviction is not crime of violence for release notification purposes).

Both parties consented to proceed before the undersigned for all proceedings, including entry of judgment. (ECF 4, 6). See 28 U.S.C. § 636(c)(1).